**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------ X
PRAESIDIAN CAPITAL OPPORTUNITY :
FUND III and PRAESIDIAN :
CAPITAL OPPORTUNITY FUND III- :
A, LP, :
                Plaintiffs, :
                 :
  -against- :
                 :
THOMAS PERSINGER, :
                 :
                Defendant. :
------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/28/2018

No. 17 Civ. 8376 (JFK)
**OPINION & ORDER**

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is a motion by Plaintiffs Praesidian Capital Opportunity Fund III, LP ("Fund III") and Praesidian Capital Opportunity Fund III-A, LP ("Fund III-A") (collectively "Praesidian") for attorneys' fees. Praesidian makes its motion after the Court's entry of a final judgment against Defendant Thomas Persinger ("Persinger") on December 26, 2017. For the reasons stated below, the Court grants Praesidian's motion for attorneys' fees in the amount of $20,959.80.

### I. Background

    Persinger is the former Chief Executive Officer of Facility Services of America ("FSA"), a janitorial services company in Port Richey, Florida. (Compl. ¶ 1.) Praesidian is a private investment firm and a Delaware limited partnership with its principal place of business in Larchmont, New York. (Id. ¶ 2.) On August 28, 2012, Praesidian entered into a Securities

1

Purchase Agreement and Security Agreement ("Loan Agreement") with Support Services of America, Inc. ("SSA"), pursuant to which SSA sold three different classes of secured subordinated notes to Praesidian. (Id. ¶ 8.) In January of 2014, FSA agreed to purchase all of the assets of SSA and subsequently entered into a joinder agreement with Praesidian pursuant to which FSA agreed to assume all obligations of SSA under the Loan Agreement. (Id. ¶¶ 11-12.) Between January 2016 and January 2017, Persinger executed three separate guaranties with Praesidian (the "Guaranties"), pursuant to which Persinger personally guaranteed certain promissory notes FSA had executed in favor of Praesidian. (Id. ¶ 13.)

In September of 2017, Persinger shut down FSA's operations and was terminated by FSA's Board of Directors. (Id. ¶ 21.) Praesidian alleges that Persinger's wife has started a new janitorial services company, BCG, at the same location where FSA operated prior to Persinger's resignation. (Id. ¶ 22.) On September 26, 2017, the General Partner of Praesidian sent a letter to Persinger stating that, pursuant to the terms of the Loan Agreement, FSA had defaulted on its obligation to keep in full force and effect its existence and maintain all of its properties in good working order and condition, thereby defaulting on the promissory notes referenced in the Guaranties. (Id. ¶ 23.)

2

On October 31, 2017, Praesidian filed a complaint against Persinger for breach of the Guaranties. Persinger failed to respond to the complaint or otherwise appear in this action, and on December 20, 2017, the Clerk of Court entered a Certificate of Default. (See ECF No. 20.) On December 26, 2017, the Court granted Praesidian's motion for default judgment, (ECF No. 21), and entered a Final Judgment against Persinger, ordering Persinger to pay $500,000 in compensatory damages, plus interests and costs, and allowing Praesidian to recover all reasonable attorneys' fees incurred in connection with this litigation. (See ECF No. 22.) On January 11, 2018, Praesidian made the instant motion for attorneys' fees, arguing that it is entitled to $34,933.00 in fees for the work of its attorneys, Ice Miller LLP, in "prosecuting the underlying action" and "seeking to recover attorneys' fees." (See ECF No. 23.)

## II. Discussion

"Under the general rule in New York, attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule." Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003). "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is

3

sufficiently clear." NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008).  When the contract provides for attorneys' fees, "the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." Diamond D Enters. USA, Inc. v. Steinsvaag, 979 F.2d 14, 19 (2d Cir. 1992).  In determining whether an attorney's hourly rate is reasonable, a court, "[must] bear in mind all of the case-specific variables" relevant to the reasonableness of attorneys' fees, as "[t]he reasonable hourly rate is the rate a paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 190 (2d Cir. 2008).  Where a court awards fees pursuant to a valid contractual provision, "it has broad discretion in doing so, and an award of such fees may be set aside only for abuse of discretion." U.S. Fidelity and Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 74 (2d Cir. 2004) (internal quotation marks omitted).

In Section 1 of each of the Guaranties, Persinger, as Guarantor, "unconditionally and absolutely (a) guarantee[d] the full and punctual payment and performance when due of all amounts due and owing under the Notes . . . [and] (b) agree[d] to pay all liabilities and obligations of Guarantor [t]hereunder, including without limitation, all costs, expenses

and liabilities (including, without limitation, attorney's fees and expenses) required to be paid by Guarantor hereunder." (Compl. ¶ 18.) Further, in the event of a default, the Loan Agreement provides for "the payment of all reasonable out-of-pocket costs and expenses (including reasonable attorneys' fees) of the Agent in connection with enforcing its rights and the rights of the Lenders under this Agreement." (Compl. Ex. A § 11.03(a).) As defined in the Loan Agreement, the "Agent" is Fund III as agent for "the Lenders"—i.e., Praesidian. (See id. at 1.) The plain language of these provisions is sufficiently clear so as to entitle Praesidian to attorneys' fees.

The remaining issue is the proper amount of the award. As a general matter, "the starting point in analyzing whether claimed attorneys' fees are appropriate is the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case." Bank of Am., N.A. v. Brooklyn Carpet Exch., Inc., No. 15CV5981 (LGS) (DF), 2016 WL 8674686, at *7 (S.D.N.Y. May 13, 2016), report and recommendation adopted, 2016 WL 3566237 (S.D.N.Y. June 27, 2016) (internal quotation marks omitted). Praesidian seeks an award of $34,933.00, which it contends represents a reasonable rate for a reasonable number of hours spent on the prosecution of this action and for work related to the filing of the motion for attorneys' fees. (Pls.' Mot. ¶¶ 6, 20-21.) According to Praesidian, its attorneys and a

5

paralegal performed 73.2 hours of work related to the prosecution of this action ($28,221.00 in fees) and 17.30 hours of work related to the filing of its motion for attorneys' fees ($6,712.00 in fees). (Colunga Decl. ¶¶ 2-3.) These fees are broken down in Ice Miller's itemized invoices as follows: partner Thomas Kesoglou billed 1.6 hours at a rate of $695 per hour; partner Isaac J. Colunga billed 15.5 hours at a rate of $435 per hour; associate Chase Stuart billed 22.6 hours at a rate of $515 per hour; associate Heather Maly billed 2.3 hours at a rate of $420 per hour; associate Nicholas Casto billed 19 hours at a rate of $335 per hour in 2017 and $405 per hour in 2018; associate Kelsey Weyhing billed 8.1 hours at a rate of $225 per hour; associate Martha Kohlstrand billed 11.2 hours at a rate of $435 per hour; and paralegal Maria Arreola-Flores billed 11 hours at a rate of $255 per hour. (Pls.' Mot. ¶¶ 7-14; Colunga Decl. Ex. A.)

"A reasonable rate is one in-line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience[,] and reputation." MB Fin. Bank, N.A. v. 56 Walker, LLC, No. 11 Civ. 5538(JGK), 2011 WL 6338808, at *3 (S.D.N.Y. Dec. 19, 2011). Although some of the rates charged by Ice Miller in this action are relatively high ($695 per hour for partner Thomas Kesoglou and $255 per hour for paralegal Maria Arreola-Flores), they generally fall within the

range of reasonable. See id. at *3-4 (finding rates of $645 per hour for litigation partners and $545 per hour for senior litigation associate reasonable); In re AOL Time Warner S'holder Derivative Litig., No. 02 Civ. 6302(CM), 2010 WL 363113, at *13 (S.D.N.Y. Feb. 1, 2010) (finding that rates ranging from $90 to $250 for paralegals, $175 to $550 for associates and other non-partner level attorneys, and $300 to $850 for partners "fall within the range of those commanded by leading lawyers in the Southern District").

In determining whether a reasonable number of hours were expended on this matter, the Court may consider "the nature and quality of the work submitted by counsel in connection with the litigation" as well as "the degree of counsel's success." Bank of Am., N.A., 2016 WL 8674686, at *8. Where the requested amount of fees is excessive because the number of stated hours is greater than that which should have been required for the work produced, "the Court should reduce the stated hours accordingly." Id.

Although Persinger does not challenge the number of hours spent on this matter and did not otherwise appear in this action, the Court finds that an award of $34,933.00 would be excessive, precisely because Persinger failed to appear. Praesidian contends that its attorneys and a paralegal spent a total of 90.5 hours of work on this matter, which it argues was

7

a reasonable amount of time because "[t]he underlying deals that gave rise to Defendant's guaranties were complex, and required Praesidian's attorneys to review all relevant deal documents to determine the validity of the guaranties, how the deals worked, what has been paid, if anything, and the amounts outstanding." (Colunga Decl. ¶¶ 2-3, 7.) However, according to the invoices submitted by Ice Miller, Praesidian's attorneys billed for 42 hours of work—approximately 46 percent of the total hours expended on the matter—after the complaint was filed on October 31, 2017. (See Colunga Decl. Ex. A.)

The Court finds that 42 hours spent on litigation after the complaint was filed in an action "in which no defendant ever appeared, no discovery ever commenced, and the only motion practice involved the unopposed application for a default judgment" is an unreasonable amount of time in a typical breach-of-contract case. Bank of Am., N.A., 2016 WL 8674686, at *10; see also Customers Bank v. Anmi, Inc., No. 11cv7992 (AJN) (DF), 2014 WL 842577, at *4, *10 (S.D.N.Y. Mar. 3, 2014) (finding 20.6 hours to be reasonable in action arising from default on promissory note, where defendant answered the complaint but otherwise failed to defend the action); Diamant v. Dynasto Diamonds and Jewelry Group Corp., No. 04cv3844 (GBD) (DF), 2006 WL 728802, at *5 (S.D.N.Y. Mar. 20, 2006) (finding 18.91 hours spent on a breach-of-contract case in which a default was

entered against defendant to be reasonable).  When Persinger failed to appear to defend the action, "Plaintiff's counsel had no further need to work on the case, other than to seek a ministerial entry of default by the Clerk of Court and to move for a default judgment." Bank of Am., N.A., 2016 WL 8674686, at *10.  Further, Praesidian provides no explanation as to why a matter that lasted approximately four and a half months and in which no Defendant ever appeared required the work of seven attorneys. (See Colunga Decl. Ex. A.)

Where the requested number of hours is excessive, a court "may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application." McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund, 450 F.3d 91, 96 (2d Cir. 2006) (internal quotation marks omitted).  Accordingly, the Court sees fit to apply an across-the-board reduction of 40 percent to Praesidian's request. See Bank of Am., N.A., 2016 WL 8674686, at *10-11 (finding a 25 percent reduction in fees appropriate where attorneys excessively "billed over 70 hours litigating a[] [breach-of-contract] action in which no defendant ever appeared"); MB Fin. Bank, 2011 WL 6338808, at *4 (applying "across-the-board reduction of 40% to the plaintiff's attorneys' hours").  The Court finds an award of $20,959.80 to be more than reasonable.

## CONCLUSION

For the reasons stated above, Praesidian's motion for attorneys' fees is GRANTED in the amount of $20,959.80.

The Clerk of the Court is respectively directed to terminate the motion docketed at ECF No. 23.

**SO ORDERED.**

Dated:    New York, New York
         March 28, 2018

_John F Keenan_
John F. Keenan
United States District Judge